IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | NO. 2:12-CR-018-RWS-JCF |
| | : | |
| PHILLIP ALEXANDER, | : | |

**NON-FINAL REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Alexander's Motion to Dismiss Indictment (Doc. 73). Defendant moves to dismiss the Indictment "on the grounds that the Government's over-involvement in the events said to constitute crimes violate[d] his due process rights." (*Id.* at 1). He also requests that the Court conduct a hearing on his motion. (*Id.*). Because Defendant has not shown that the governmental involvement here was so outrageous that dismissal would be justified, it is **RECOMMENDED** that Defendant's motion be **DENIED** without a hearing.

**Background**

An Indictment filed July 17, 2012 (Doc. 1) charges Defendant Alexander with conspiring with his co-defendants Walt Verrill, Benny Leverett, and Dan Redding to aid and abet Michael Griffin to possess with the intent to distribute methamphetamine, beginning on or about June 24, 2011 and continuing until on or

1

about September 30, 2011 (Count Two). The Indictment also charges Defendant Alexander with aiding and abetting Griffin to possess with intent to distribute methamphetamine on or about July 28, 2011 and September 22, 2011 (Counts Four, Six, and Seven).[1]

The Government represents that these charges resulted from "a two year undercover investigation conducted by the FBI into the criminal activities of the Outlaw Motorcycle Club (OMC) and its affiliated gangs in North Georgia." (Doc. 93, Gov't Resp. at 2). The Government further states that "[t]he indictments, discovery, and proffers by the Government at the Defendants' detention hearings have revealed the following information about the undercover investigation":

> The FBI, through the use of an undercover agent and cooperating individuals, developed evidence that members and persons associated with the OMC and its affiliates were involved in illegal drug and firearms trafficking which led to multiple indictments.
> Brad Smith ["Smith"], the then-President of the Black Pistons Motorcycle Club's Cleveland, Georgia chapter, an OMC-affiliated gang, was working as an FBI confidential informant. Smith introduced an undercover law enforcement officer ["Griff" or "Griffin"] to the motorcycle gang community in North Georgia. Griff posed as Smith's long-time friend and a big time drug dealer from Florida who was looking to expand his drug trafficking business into North Georgia and Tennessee. The FBI's investigation included using Smith and Griff to record conversations with targets concerning their criminal activities; Griff purchasing and attempting to purchase illegal drugs, including methamphetamine, marijuana and LSD; and Griff

---

[1] Counts One, Three, and Five of the Indictment charge co-defendant Reynol Castrejon with conspiracy to possess with the intent to distribute methamphetamine and possession with the intent to distribute methamphetamine.

paying members and persons associated with the OMC and its affiliates to provide protection for both real and sham drug deals.

(*Id.* at 2-3).

On September 14, 2012, Defendant Alexander filed the pending motion to dismiss. (Doc. 73). The Government filed its response on October 8, 2012 (Doc. 93), and Defendant filed his reply on October 16, 2012 (Doc. 96). Briefing is now complete, and the Court turns to the merits of Defendant's motion.

## **Discussion**

Defendant argues that "[w]hen involvement by federal agents in the commission of a crime is so outrageous as to shock the conscience, either due process or the Court's supervisory powers will preclude prosecution." (Doc. 73, Mot. at 4).[2] He seeks dismissal of the Indictment by invoking a defense that has been recognized, but apparently never applied within this Circuit. In *United States v. Haimowitz*, 725 F.2d 1561 (11th Cir. 1984), the court wrote, "In *United States v.*

---

[2] Defendant also contends that he could not have been in a conspiracy with a government agent, citing *United States v. Arbane*, 446 F.3d 1223 (11th Cir. 2006), and refers to that as an "insurmountable defect," presumably in the Indictment. (*See* Doc. 73 at 3). That argument is not developed, and does not appear to be Defendant's basis for seeking dismissal of the indictment. Furthermore, the court in *Arbane* stated "[i]f there are *only two members of a conspiracy*, neither may be a government agent or informant who aims to frustrate the conspiracy." 446 F.3d at 1228 (emphasis added). But in this case, there are more than two charged members of the conspiracy, and as the Government points out (*see* Doc. 93, Gov't Resp. at 7 n. 4), Count Two charges that Defendants conspired *with each other* to aid and abet a government agent; it does not charge Defendant solely with conspiring with a government agent. Therefore, *Arbane* is inapplicable.

3

*Russell*, 411 U.S. 423 [] (1973), the Supreme Court recognized outrageous governmental conduct as a legal defense." 725 F.2d 1561, 1577 (11th Cir. 1984). In *Russell*, the Court explained, "While we may *some day* be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed." *United States v. Russell*, 411 U.S. 423, 431-32 (1973)(emphasis added). The Court found that the government agent's conduct in that case, supplying the defendant with materials to make methamphetamine, "stop[ped] short of violating that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432 (quotation omitted). Therefore, while the Supreme Court in *Russell* left open the possibility that an outrageous governmental conduct defense might be recognized *some day*, it did not apply such a defense in that case.

Within this Circuit more recently, in *United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011), the court explained that the Eleventh Circuit had "never applied the outrageous government conduct defense and ha[d] discussed it only in dicta," and pointed out that several other circuits "have either rejected this defense completely" or "have been sharply critical of the defense," thus casting doubt on its continued viability. *Id.* at 1111; *see also United States v. Galvis-Pena*, No.

1:09-CR-25-TCB-CCH-4, 2011 U.S. Dist. LEXIS 153045, at *32-33 (N.D. Ga. Dec. 6, 2011) ("Indeed, the Eleventh Circuit has never found that a case should have been dismissed on the ground of outrageous governmental conduct." (citing Donald F. Samuel, *Eleventh Circuit Criminal Handbook* § 87 at 4-7 (2011 Ed.) (claim may at least still be "theoretically possible")), *adopted by* 2012 U.S. Dist. LEXIS 16239 (N.D. Ga. Feb. 9, 2012).

"To succeed under this defense, the defendant must show that the challenged governmental conduct violated that fundamental fairness, shocking to the universal sense of justice, mandated by the due process clause of the fifth amendment." *Haimowitz*, 725 F.2d at 1577 (quotation omitted)). "Whether outrageous governmental conduct exists turns upon the totality of the circumstances with no single factor controlling[,] and the defense can only be invoked in the rarest and most outrageous circumstances." *Id.* (quotations omitted). "Although federal courts possess the authority to dismiss an indictment for governmental misconduct, dismissal is an extreme sanction which should be infrequently utilized[, and d]ismissal is only favored in the most egregious cases." *United States v. Michael*, 17 F.3d 1383, 1386 (11th Cir. 1994) (quotations omitted).

Defendant contends that sufficient outrageousness to warrant dismissal of the indictment can be shown where "the Government instigates the criminal activity, provides the entire means for its execution, and runs the operation with

5

only meager assistance from the defendant," which, he argues "perfectly describes Alexander's alleged involvement in this case." (Doc. 73, Mot. at 4). Defendant asserts that the Government's theory of this case "fails as a matter of law because Government agents created the entire situation," i.e., "one Government agent [Brad Smith] sent Alexander to help another Government agent [Michael Griffin] to do something that did not actually involve drugs or a drug transaction." (*Id.* at 2-3). Defendant denies that he was "looking for an opportunity or otherwise predisposed to commit any crime," and contends that the Government was so involved in the underlying events "that there would be no criminally actionable conduct but for the acts of the Government agents." (*Id.* at 3-4).

The Government counters that it "merely provided Defendant Alexander with a routine criminal opportunity of which he was more than willing to take advantage," and argues that "the Government's law enforcement techniques here do not approach that demonstrable level of outrageousness that would be necessary to warrant dismissal of [the Indictment]." (Doc. 93, Gov't Resp. at 16-17). Specifically, the Government proffers that Alexander first approached Griffin ("Griff") "about doing some work for him in exchange for money"; "Alexander was well aware that Griff's business was narcotics trafficking and that by asking for work he was asking to assist Griff in narcotics trafficking"; "Griff offered Alexander the opportunity to provide security at drug deals and negotiations in

6

exchange for money"; Alexander "understood what was going on and agreed to participate"; and "Alexander provided protection for Griff on four separate occasions from June to September 2011, and was paid each time." (*Id.* at 16).

The undersigned finds the challenged governmental conduct does not rise to the level of offending notions of fundamental fairness and is not shocking to the universal sense of justice, and therefore it does not violate Defendant's Fifth Amendment due process rights. "[G]overnment infiltration of criminal activity is a recognized and permissible means of investigation, even though the government agent supplies something of value to the criminal." *United States v. Tobias*, 662 F.2d 381, 386 (5th Cir. 1981)[3] (internal quotations omitted). In particular, "[w]here the government is investigating offenses involving illegal drugs, it often must engage in undercover operations because it is very difficult to discover the contraband. This activity by the government does not generally constitute outrageous conduct." *United States v. Lopez-Cruz*, 170 Fed. Appx. 634, 636 (11th Cir. 2006) (unpublished decision); *see also United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998) ("The fact that government agents may supply or sell illegal drugs or provide other essential services does not necessarily constitute misconduct."). Furthermore, "[w]here the government merely presents a defendant

---

[3] Decisions of the Fifth Circuit handed down before Oct. 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

7

with a routine criminal opportunity of which the defendant is more than willing to take advantage, the government's actions do not amount to outrageous conduct warranting dismissal." *United States v. Rolon*, 445 Fed. Appx. 314, 322 (11th Cir. 2011) (unpublished decision).

A closer look at one leading case illustrates how remarkably difficult it is to show that government misconduct is outrageous enough to justify dismissal. In *Tobias*, Drug Enforcement Administration ("DEA") agents established a chemical supply company; agents placed an advertisement in High Times Magazine offering to sell chemicals and laboratory equipment to manufacture drugs; agents recommended to the defendant that he make Phencyclidene (PCP) because it was easier to make than cocaine; agents gave the defendant the formula and some of the chemicals necessary to make the drug; and agents provided ongoing advice on how to make PCP. *Tobias*, 662 F.2d at 383-84. The court found that the government conduct in that case "set[s] the outer limits to which the government may go in the quest to ferret out and prosecute crimes in this circuit," yet because the defendant "was a predisposed active participant, motivated solely by a desire to make money," the court found that the conduct was not so outrageous to constitute a due process violation. *Id.* at 387.

In this case, Defendant has not demonstrated that Government agents coerced, pressured, or misled him to engage in criminal activity in which he was

not otherwise predisposed to engage, or otherwise shown that the governmental conduct was so outrageous that it violated his due process rights. As described above, the Government has proffered that, prior to the transactions at issue in the Indictment, Defendant allegedly approached Griffin about doing work for him and then agreed to provide security for multiple drug-related transactions.

Furthermore, Defendant has not shown that he is entitled to a hearing on his motion. "[W]ithout sufficient factual allegations to support an outrageous-governmental-conduct defense, the Court need not hold an evidentiary hearing on the issue." *Galvis-Pena*, 2012 U.S. Dist. LEXIS 16239, at *16 (citing *United States v. Holloway*, 778 F.2d 653, 658 (11th Cir. 1985). Moreover, Defendant's contentions about the agents' conduct in this case "raise questions that are intermeshed with questions going to the merits of the case because they would require proof of the criminal conduct alleged in the indictment," and therefore, "they are not capable of resolution without a 'trial of the general issue' under FED. R. CRIM. P. 12(b)(2)." *Id.*[4] Thus, a pretrial evidentiary hearing on Defendant's motion would be inappropriate. *See, e.g. id.* at *15-16 (finding that magistrate

---

[4] Rule 12(b)(2) provides that "[a] party may raise by *pretrial* motion any defense, objection, or request that the court can determine *without a trial of the general issue*." FED. R. CRIM. P. 12(b)(2) (emphasis added). As the court pointed out in *Galvis-Pena*, because "the issue of outrageous governmental conduct remains a question of law for the Court to decide," Defendant "will be permitted to move for dismissal *at trial* should the evidence establish this defense." 2012 U.S. Dist. LEXIS 16239, at *17 n. 6 (emphasis added).

judge properly denied the defendant's request for an evidentiary hearing on his motion to dismiss for outrageous governmental conduct because he had not made a sufficient showing of outrageousness to warrant a hearing, and a hearing would require a "trial of the general issue," i.e., proof of the underlying criminal conduct alleged in the indictment).

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss the Indictment (Doc. 73) be **DENIED** without a hearing.

**IT IS SO REPORTED AND RECOMMENDED** this  14th  day of January, 2013.

_____
J. CLAY FULLER
United States Magistrate Judge